[No. 17092.   Department Two.   October 6, 1922.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY BAILEY
*(informed against as Roy Tidball), Appellant.*[1]

BAIL (9)—FORFEITURE—OWNERSHIP OF MONEY.  Where cash bail
is deposited to release a prisoner, it can not be disposed of without
the owner's consent, except by legal forfeiture.

SAME (9)—FORFEITURE—OWNERSHIP OF MONEY—EVIDENCE—SUF-
FICIENCY.  Cash deposited as bail is shown to belong to the depositor
and not to the accused, where at accused's request, he sent it by
telegraph to the clerk, directing that receipt be issued in his own
name and given to accused to be brought to the depositor, and later
the depositor had accused arrested on a bench warrant, and sought
legal advice as to the recovery of the money.

SAME (10)—DEPOSIT IN LIEU OF BAIL—RETURN.  Where the pris-
oner is returned to the custody of the sheriff within sixty days after
forfeiture of the bail money, the assignee of the bailor is entitled to
the return of the money.

SAME (10)—DEPOSIT—DISPOSITION OF MONEY—ACQUIESCENCE.  A
bailor is shown to have acquiesced in the disposition of part of the
bail money deposited to release a prisoner who had damaged the
sheriff's automobile, where the prisoner agreed to apply the same on
the bill for damages, the bailor when informed thereof said what-
ever the prisoner did was all right, and he testified in effect that· he
was willing to help him to any ordinary amount and only objected
to the forfeiture of the balance.

Appeal from a judgment of the superior court for
Whatcom county, Brown, J., entered September 19,
1921, denying a petition to vacate the forfeiture of cash
bail, after a hearing before the court.  Reversed.

*Wm. R. Bell,* for appellant.

*Loomis Baldrey, Frank W. Radley,* and *E. D.
Kenyon,* for respondent.

MAIN, J.—The question in this case is whether bail
money should be returned to the assignee of the person

[1]Reported in 209 Pac. 847.

who deposited it. The hearing was had before the superior court and an order entered denying the application for the return of the money; from this the appeal is prosecuted.

On the 11th day of July, 1921, one Roy Bailey, informed against as Roy Tidball, while passing through the city of Bellingham with a number of cases of whiskey in the automobile which he was driving, was arrested. In making the arrest, the car which Bailey was driving collided with a car owned by the county and which was driven by a deputy sheriff. On the day following the arrest, Bailey was charged, by information in one case, with the crime of bootlegging, and in another case was charged with the crime of resisting an officer. After his arrest, he communicated, through an attorney whom he had employed, with W. H. Tidball at Seattle, desiring the latter to furnish a bond or bail money. Responding to this request, Tidball caused $1,500 to be sent to the clerk of the court of Whatcom county through the Western Union Telegraph Company, and about the same time wrote a letter to the clerk. In the letter he requested that the receipt for the money be issued in his name and that it be turned over to Bailey in order that the latter might bring it to him at Seattle.

On July 13, Bailey appeared in court, represented by an attorney, and pleaded not guilty to each of the charges. The bond in the bootlegging charge was then fixed at $1,250 cash, and in the resisting officer charge at $250. On the day following, the defendant again appeared in court with his attorney, the prosecuting officer being present, and pleaded guilty to the charge of illegally transporting intoxicating liquor. After this was done, the bond in the bootlegging charge was reduced to $750, and it was agreed between all the

parties then present that the balance of the bail deposited in that case should be paid to the sheriff to apply on the repairs to the county automobile which was damaged at the time of the arrest. At this time it was agreed that Bailey should appear on the 28th day of July for sentence. On the 28th day of July, Bailey did not appear for sentence, and an order was entered forfeiting the bail money in the bootlegging case, which was in the sum of $750. In the other case an order of dismissal was entered, and it was stipulated that the $250 bail money in that case should be used for the purpose of paying the balance of the repairs on the county automobile and the remainder should be paid to Bailey's attorney, which was done. After this took place, a disagreement arose at Seattle between Bailey and Tidball with reference to the disposition of the bail money; Tidball refusing to acquiesce in the disposition that had been made of it.

The first question to be determined is whether the money deposited was that of Bailey or Tidball. Of course, if it was Bailey's money, he had a right to dispose of it as he saw fit. If it was Tidball's money, it could only be disposed of by legal forfeiture or by his acquiescence in the disposition of it. Upon the question as to the ownership of the money, the evidence of Bailey and Tidball is directly in conflict. Upon the hearing, the testimony took a somewhat wide range, but there are a few circumstances which seem to point unerringly with reference to the ownership of the money.

After the bail had been forfeited, Tidball, at his own expense of something like a hundred dollars, caused a bench warrant to issue and to be placed in the hands of the sheriff of King county, who subsequently apprehended Bailey and returned him to the sheriff of What-

com county. At the time of the hearing upon this matter, which was September 19, 1921, Bailey had not been sentenced, but was then in the Whatcom county jail. The receipt already referred to was made out in the name of Tidball, and while the letter which he wrote to the clerk of the court had been destroyed, that officer testified that his understanding of the letter was that the receipt should be issued in Tidball's name and given to Bailey, who was to carry it to Seattle and there deliver it to Tidball. After the controversy between Bailey and Tidball arose, the former communicated with his attorney at Bellingham and requested that he place a mortgage upon the automobile which he was driving at the time of the arrest and which was then in that city, in order that he might settle with Tidball. At this time, however, the automobile had been seized by the officers of the Federal government, and consequently no mortgage could be placed upon it. If the money was not Tidball's, there appears to be no reason why Bailey, as he testified, should desire to borrow the money upon the car in order to settle with him. Even though Tidball had been in the habit of buying whiskey from Bailey unlawfully, a case at a time on a number of occasions, there is no evidence to show that the money which he deposited was tainted as contraband. The trial court in deciding the matter apparently did not have in mind the full force and effect of the testimony of the clerk of the court, because in the opinion which appears in the record it is said that that officer's testimony was sufficient alone upon which to base the decision, even though it was not based entirely on it. The testimony of the clerk, so far as it has any bearing on the controversy, would tend to support the contention that the money was Tidball's.

The attorney for Bailey testified that, before the

arrangement was made to turn over the money for the purpose of paying for the repairs on the automobile, he communicated with Tidball and that the latter said that whatever Bailey did was all right with him. This conversation took place sometime prior to the forfeiture of the $750 to the county and did not refer to that matter at all. At the time there was nothing to indicate to Tidball that Bailey would not appear at the time fixed for his sentence and that the bail money might, for that reason, be forfeited. In our opinion, when the evidence is all considered and properly weighed, it leads to but one conclusion, and that is that the money belonged to Tidball and not to Bailey. Within sixty days after the bail was forfeited, Bailey was returned to the custody of the sheriff of Whatcom county, and under the holding in the cases of *State v. Johnson*, 69 Wash. 612, 126 Pac. 56, and *State v. Jackschitz*, 76 Wash. 253, 136 Pac. 132, the assignee of Tidball was entitled to the return of the money, unless he had acquiesced in the turning over of the $545 to the sheriff and the $205 to the attorney.

This brings us to the question as to whether there was such an acquiescence. The attorney testified that he communicated with Tidball by telephone before the arrangement was made to turn over the $545 and the $205, and that the latter said that whatever Bailey did was all right, and he suggested to the attorney not to lead Bailey into any controversies with the authorities over the automobile. Bailey's testimony supports that of the attorney. Aside from this, it appears by reasonable inference from the testimony of Tidball that he did acquiesce in or authorize the payment of the money to the sheriff and the attorney. He says that, when he first consulted an attorney with reference to getting

14—121 Wash.

back the money which he had deposited as bail, it looked as though he could at least save a ''part of my money.'' In another place in his testimony he in effect says that he is willing to help Bailey ''to any ordinary amount,'' but that he would not stand for the last $750 which was forfeited to the county.

It is clear enough, after considering all the testimony, that Tidball did acquiesce in and authorize the disposition made of the $545 and the $205, and that having done so, he is not now in a position to complain as to these items.

The judgment will be reversed, and the cause remanded with the direction to enter an order setting aside the forfeiture of the $750 to the county and directing its return to Tidball.

Hovey, Holcomb, Tolman, and Mackintosh, JJ., concur.