[No. 29098-3-I. Division One. May 17, 1993.]

*In the Matter of the Marriage of* CANDICE *and* DAVID BRALLEY.

BEATRICE R. GIBSON, *Appellant,* v. THE COUNTY OF SNOHOMISH, *Respondent.*

648

*Harold E. Baily,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Marie Ann Turk, Deputy,* for respondent.

KENNEDY, J. — Beatrice Gibson appeals the trial court's affirmance of a commissioner's order denying her motion to exonerate bail which she allegedly posted for David Bralley. Finding that Gibson had no right to notice of the forfeiture of the bail, we affirm.

FACTS

On February 20, 1987, the marriage of David and Candice Bralley was dissolved. The dissolution decree required David Bralley to pay $200 per child per month and day-care expenses as incurred. Because Bralley failed to make certain child support payments, on October 18, 1990, the State filed a motion and order to show cause — contempt for nonpayment of child support. The order required Bralley to appear in person in room 305 of the Snohomish County Courthouse, on December 5, 1990, at 3 p.m., for a show cause hearing as to why he should not be found in contempt for failure to make the child support payments required by the decree of dissolution.

Bralley was served a copy of this motion and order at his residence by the Snohomish County Sheriff on November 19, 1990.

Bralley appeared in court on December 5, 1990, and signed an agreed order of contempt wherein he agreed to pay owing child support. As part of the agreed order, he delivered a $375 check for child support then owing. This check was later returned for insufficient funds.

On January 3, 1991, the State filed an order to show cause why Bralley should not serve jail time for failure to comply with the December 5, 1990, contempt order. The order directed Bralley to appear in the commissioner's courtroom, room 305 of the Snohomish County Courthouse, on January 23, 1991. A copy of the order was personally served on Bralley on January 8, 1991.

On January 23, 1991, an order of continuance was entered, continuing the show cause hearing until January 30, 1991. Bralley failed to appear on January 30, and a civil bench warrant was issued for his arrest. The bench warrant provided that bail would be fixed at $1,000, "conditioned upon Respondent appearing at 10:00 a.m. on the first Monday following apprehension".

Subsequently, Bralley was arrested in Island County on several outstanding warrants, including this civil bench warrant. On March 9, 1991, Bralley was served with a copy of the civil bench warrant for his failure to appear in Snohomish County on January 30. Cash bail, including cash bail for the civil bench warrant, was paid by Gibson. The only indication of Gibson's payment was a receipt with her name on it.

On March 11, 1991, the Island County Sheriff's office informed the Snohomish County Prosecutor's office that Bralley had posted $2,842 bail.[1] A copy of Gibson's receipt was filed with the Snohomish County Clerk at this time.

The Monday following the date of apprehension, the date that Bralley was to appear in Snohomish County Superior Court on the bench warrant, was March 11, 1991. Bralley did not appear that Monday.

[1]Appellant claims that she was able to recover the remainder of the cash bail in another proceeding which is not the subject of this appeal.

The State then filed a motion to transfer $1,000 of the cash bail to the Washington State Child Support Registry to pay Bralley's child support obligation. This motion was scheduled to be heard on March 25, 1991. Notice of this hearing was mailed to Bralley. On March 25, 1991, the court ordered that the cash bail be transferred, and Bralley was ordered to appear for sentencing on April 10, 1991. The copy of Gibson's receipt was apparently misfiled, and was not discovered until after the cash bail was forfeited.

Gibson filed her motion and affidavit for exoneration of cash bail on April 23, 1991. In it she claims that she received no notice that the bail would be forfeited, and she also contends that the $1,000 cash bail here at issue should be returned because of her "production" and "apprehension" of Bralley.

This motion was set for hearing on May 8, 1991, and at that time, the motion was denied. In the order, the court commissioner noted that the forfeiture for failure to provide notice provision of RCW 10.19.090[2] did not apply to the cash bail, that Gibson was not the party of record for the bail, that she was not responsible for Bralley's apprehension under RCW 10.19.140, and that, if RCW 10.19.140[3] did apply, the

---

[2]RCW 10.19.090 provides that

"In criminal cases where a recognizance for the appearance of any person, either as a witness or to appear and answer, shall have been taken and a default entered, the recognizance shall be declared forfeited by the court, and at the time of adjudging such forfeiture said court shall enter judgment against the principal and sureties named in such recognizance for the sum therein mentioned, and execution may issue thereon the same as upon other judgments. If the surety is not notified by the court in writing of the unexplained failure of the defendant to appear within thirty days of the date for appearance, then the forfeiture shall be null and void and the recognizance exonerated."

[3]RCW 10.19.140 provides that

"If a forfeiture has been entered against a person in a criminal case and the person is returned to custody or produced in court within twelve months from the forfeiture, then the full amount of the bond, less any and all costs determined by the court to have been incurred by law enforcement in transporting, locating, apprehending, or processing the return of the person to the jurisdiction of the court, shall be remitted to the surety if the surety was directly responsible for producing the person in court or directly responsible for apprehension of the person by law enforcement."

State was entitled to $1,000 as an offset for the cost of apprehending Bralley, as allowed by the statute.

After a motion for reconsideration was denied, Gibson filed a motion in the presiding judge's department appealing the commissioner's ruling. This was treated as a motion for revision and was denied. This appeal followed.

## DISCUSSION

### I

### Standard of Review

■■ A trial court's decision on whether to vacate a bail forfeiture will be overturned only upon a showing of abuse of discretion, that is, if the decision is "manifestly unreasonable or based upon untenable grounds or reasons" or in violation of law. *State .v. Hampton*, 107 Wn.2d 403, 409, 728 P.2d 1049 (1986).

### II

### Does Improper Notice Require Reversal
### of the Trial Court?

We first consider whether the trial court's decision not to exonerate the bail was an abuse of discretion because notice of the forfeiture was not given to Gibson. Specifically, Gibson contends that both RCW 10.19.090 and article 1, section 20 of the Washington State Constitution require that she be given notice of any bail forfeiture, and that any forfeiture made without such notice is void. We hold that neither RCW 10.19.090 nor Const. art. 1, § 20 requires that Gibson be given notice of the bail forfeiture hearing in the present case.

■ RCW 10.19.090 provides that a bond will not be forfeited in a criminal case if the surety is not notified within 30 days of the appellant's failure to appear. On its face, the statute clearly does not apply to the present situation because it applies only in the criminal context. The bail which was forfeited in the instant case was bail on a bench warrant for failure to appear in a *civil* action and this was clearly noted on its face. The bail was based on a contempt proceeding, but not one that could be classified as "criminal".

Historically in Washington, a court had the power to enter an order of contempt on several grounds: criminal contempt prosecuted under former RCW 9.23.010, civil contempt pursuant to former RCW 7.20.010 *et seq.*, and contempt proceedings brought by the inherent power of the court. *State v. Boatman,* 104 Wn.2d 44, 46, 700 P.2d 1152 (1985). Both the "criminal" and "civil" contempt statutes have now been combined and recodified in RCW 7.21.

■ ■ When punishment in contempt cases is not inevitable but can be controlled by the party himself or herself, such contempt actions are not considered "criminal" but historically are considered civil. Since it was designed to secure Bralley's appearance in court, contempt in this case should be considered a type of remedial or civil contempt. *See In re King,* 110 Wn.2d 793, 756 P.2d 1303 (1988). A criminal bond statute does not apply in such a situation.

Moreover, quite aside from the fact that RCW 10.19.090 on its face only applies in criminal cases, it also relates to posted *bond* and not cash bail. The two are different. They have different purposes, and rules governing notification of bond sureties do not logically apply to situations involving cash bail. A review of the definitions of "civil bail", "cash bail", "bail bonds" and "sureties" highlights the distinction. Civil bail is defined as:

> A bond, deposit of money or of property, to secure the release of a person who is under civil arrest for failing to pay a debt which has been reduced to court order and its effect is to insure payment of such order.

Black's Law Dictionary 222 (5th ed. 1979).

Cash bail bond is defined as:

> A sum of money, in the amount designated in an order fixing bail, posted by a defendant or by another person on his behalf with a court or other authorized public officer upon condition that such money will be forfeited if the defendant does not comply with the directions of a court requiring his attendance at the . . . proceeding involved and does not otherwise render himself amenable to the orders and processes of the court.

Black's, at 128.

Bail bond is defined as:

> A written undertaking, executed by the defendant or one or more sureties, that the defendant designated in such instrument will, while at liberty as a result of an order fixing bail and of the execution of a bail bond in satisfaction thereof, appear in a designated criminal action or proceeding when his attendance is required and otherwise render himself amenable to the orders and processes of the court, and that in the event he fails to do so, the signers of the bond will pay to the court the amount of money specified in the order fixing bail.

Black's, at 128.

Surety is defined as:

> One who undertakes to pay money or to do any other act in event that his principal fails therein. One bound with his principal for the payment of a sum of money or for the performance of some duty or promise and who is entitled to be indemnified by some one who ought to have paid or performed if payment or performance be enforced against him. Everyone who incurs a liability in person or estate, for the benefit of another, without sharing in the consideration, stands in the position of a "surety," whatever may be the form of his obligation.

Black's, at 1293.

■■ The definitions highlight the fact that a person who posts a *bond*, or a surety, has a special role in the production and security of the accused. This person is responsible if the accused does not appear at the required time. However, in the case of cash bail, the appearance of the accused is assured by the security of the money itself, and the person who posted the money has no special role in the process.

This difference is explored in *Corpus Juris Secundum* wherein it is stated that:

> The underlying legal theories behind *bail bonds* and *cash bail* are different; in bail bonds the law looks to the surety to guarantee defendant's appearance, while in cash bail the law looks to the money already in the hands of the state to insure defendant's appearance.
>
> . . . .
> . . . Depositors of cash bail are not sureties, and thus are not entitled to the statutory and constitutional rights of a surety.

(Footnotes omitted. Italics ours.) 8 C.J.S. *Bail* §§ 88, 89, at 109, 111 (1988); *see also State v. Jakschitz*, 76 Wash. 253,

256, 136 P. 132 (1913) (court has power to return cash bail to person who posted, but is not required to do so since statute regarding return of money to surety "has no reference to the forfeiture of cash bail").

■ Because the surety on a bond has a special role in providing security for the release of a prisoner and may assist in the apprehension of a fugitive, many states have statutes, such as RCW 10.19.090, which require notification to a surety, before forfeiture of a bond. However, because cash bail provides security for a fugitive in a civil action, notification of the poster of the cash bail is not required or necessary and is not covered by statutes such as RCW 10.19-.090. Thus, Gibson is not protected by RCW 10.19.090, not only because we are dealing with civil bail, but also because, in spite of her representations otherwise and her no doubt sincere belief, Gibson did not post a *bond*. She is not a *surety*. She paid civil bail money in this case and got a receipt. A receipt is not the equivalent of a bail bond.[4] Thus, notice was not required either under RCW 10.19.090 or Const. art. 1, § 20.[5]

---

[4]We also note that this situation is not encompassed by RCW 19.72 which provides protections for sureties who post bonds; *see Ansparger v. Norman*, 40 S.W. 574 (Ky. 1897) (deposit of cash bail for another party does not cause depositor to be considered surety who requires notice before forfeiture). *See also State v. Friend*, 236 N.W. 20, 21 (Iowa 1931) ("so far as the state is concerned, the deposit [of cash bail] is made as if it were [the defendant's] property").

[5]Appellant was not denied notice required by Const. art. 1, § 20 of the Washington State Constitution for the same reasons that notice was not required under RCW 10.19.090. Const. art. 1, § 20 simply states that "[a]ll persons charged with crime shall be bailable by sufficient sureties . . .." Since the $1,000 bail presented in this case was not for a crime, but instead for a coercive contempt action, this article would not apply. *See In re Berry*, 198 Wash. 317, 88 P.2d 427 (1939). Moreover, even if it did apply, cash bail was granted to Bralley. He simply forfeited the bail when he failed to appear. Appellant contends that this constitutional provision was violated because its main purpose is to encourage the giving of bail. *See, e.g., State v. Mullen*, 66 Wn.2d 255, 401 P.2d 991 (1965). Even assuming that this is so, the purpose clearly applies to the criminal context and to bonds, and RCW 10.19.090 was passed merely to implement this constitutional requirement. The constitution and statute encourage the release of parties who

Appellant argues that, in the alternative, the cash was her "property", and that due process would require notice and an opportunity to be heard before the State could forfeit the cash bail which was her property. We hold that notice was not required as between appellant and the State because, in the State's eyes, the posted cash bail was not her "property".

▇ The receipt, had it been properly filed and seen by the court commissioner, reflects only that Gibson posted the cash in lieu of bail, or "cash bail". It is ambiguous with respect to who "owns" the money. Any number of circumstances are possible. X, being in jail on a bench warrant, and desiring $1,000 for cash bail, may call Y and ask Y to (1) retrieve X's $1,000 from a mayonnaise jar buried in X's backyard; (2) contact Z and borrow $1,000 from Z; (3) loan X $1,000 of Y's money; (4) repay a $1,000 loan that Y may owe to X; (5) make a gift to X of $1,000 or the use of $1,000 pending X's completion of his obligation to the court; (6) sell X's personal property for $1,000. In any of these and a myriad of other possible circumstances, Y may bring $1000 to the jail and obtain a receipt in her name. The receipt merely shows that money was received in case the State might later claim that there was no cash bail; it does not evidence whose "property" the bail money is. Moreover,

> [a]s a general rule, money, or its equivalent, deposited as bail . . . is conclusively presumed to be the property of accused as far as the purposes of the deposit are concerned, regardless of the fact that the deposit may have been made by someone else, and it is said to be held in trust.

(Footnotes omitted.) 8 C.J.S. *Bail* § 89, at 110 (1988).

Thus, cash bail is conclusively presumed to be the property of the accused as far as the purposes of the deposit are concerned. This presumption is logical from a policy standpoint. It keeps the court out of such disputes as may arise between the accused and an alleged lender or alleged owner

---

are presumed innocent until trial and save the State the expense of incarceration by authorizing that bonds be posted for an amount *less* than the required bail. *See Jakschitz*, 76 Wash. at 256.

of such funds. This is far different from the situation of the normal *bail bondsman.*

■ The court *may*, but need not, give prior notice to such a third person. The court may lawfully treat civil cash bail as belonging to the accused for all purposes of the cash deposit, whether or not a third party depositor objects.[6] Thus, it is immaterial whether this third party depositor aids in the capture of the defendant or indeed produces him at a later time. If the accused fails to appear or follow a lawful court order, the cash bail is subject to forfeiture for any lawful purpose, and the third party has no legal interest in the money from the point of view of the court. The third party depositor's ultimate remedy must be against the accused.

We hold, therefore, that, in the case of civil cash bail which is properly subject to forfeiture, a court may forfeit such bail and apply it to such lawful purposes as may exist in the case at bar, regardless of whether the cash bail was posted by the accused or by a third person on his behalf.

Of course, a court *may* exercise its discretion and its equity powers to give relief to the third party depositor. But a court does not abuse its discretion by forfeiting the cash bail (where the accused has failed to meet the conditions of his or her release from jail) and applying it to any purpose which would be lawful.

Here, the appellant does not allege that the money, if she were not claiming it, was not lawfully paid over to the Washington State Child Support Registry. Indeed, she would have doubtful standing to make such a claim, given our conclusion that, without more, the money was conclusively the property of another in the eyes of the State.

---

[6]We agree with Gibson that the fact that the receipt bearing her name and address was not timely filed is not a proper defense by the State. The State's concession, at oral argument, that, if the receipt had surfaced before the March 25 order was entered, it would have notified Gibson of the forfeiture and given her a chance to be heard, however, does not answer the question of whether such notice and opportunity is *required* by due process.

Although we need not decide whether the forfeiting of the money to the child support registry was a lawful purpose as between Bralley and the State, in view of the common law purposes of civil bail and in view of the court's broad powers under RCW 7.21 and RCW 26.18, the disposition of the funds would appear to have been lawful. At the time that the cash bail was forfeited, Bralley had failed to pay several child support payments ordered by the court, in an amount exceeding $1,000. Child support obligations become fixed judgments when due, and cash bail paid in child support contempt proceedings can be forfeited to pay due and owing child support judgments, if the contempt judgment is not purged. *Cf. Surry v. Surry*, 84 Wash. 269, 272, 146 P. 613 (1915) (terms of the supersedeas bond were to secure the sums needed to purge civil contempt for failure to pay due and owing alimony).

 Insofar as Gibson is concerned, this was not an unlawful transfer of the funds, even in the event that the funds were intended by Gibson and Bralley to be merely a loan. Any such private agreement cannot defeat the lawful purposes of this civil bail, one of which was to secure Bralley's court ordered child support obligation.[7]

## III
### Failure of Presiding Judge To Enter Own Findings of Fact and Conclusions of Law

Gibson also contends that the failure to exonerate the bail was an abuse of discretion by the trial court because the

---

[7]At first blush, our conclusion may seem to be at odds with the determination of the Washington Supreme Court in the case of *State v. Bailey*, 121 Wash. 413, 209 P. 847 (1922), wherein the court held that, when a person deposits a cash *bond* with the court it cannot be forfeited without the permission of the payer of the money. However, in that case, the nature of the posted money is not completely clear. Although it was a cash payment, the court refers to it as a bond, and the "payor's" interest in the money was noted and acknowledged by the defendant, much as a bondsman or surety is noted as such when a bond is prepared. Therefore, this case does not apply in situations where there is no clear record made of the *ownership* interest of the posted funds. Moreover, that case

presiding judge did not enter his own findings and conclusions but instead relied upon the conclusions of the court commissioner. Gibson cites to a footnote in the case of *In re Estate of Larson*, 103 Wn.2d 517, 520, 694 P.2d 1051 (1985), which states that "[w]e believe that the superior courts, in reviewing decisions of court commissioners pursuant to RCW 2.24.050, should enter their own findings of fact and conclusions of law into the record." *Larson*, 103 Wn.2d at 520 n.1.

■ This case, however, is distinct from *Larson*. In *Larson*, after reviewing the commissioner's decision, the court entered its own order. In the present case, the court merely chose not to revise the commissioner's order. Under RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court.

This distinction was recognized by Division Two of this court in *In re Dependency of B.S.S.*, 56 Wn. App. 169, 170, 782 P.2d 1100 (1989), *review denied*, 114 Wn.2d 1018 (1990), wherein the court stated that:

> we see no reason why the superior court on a revision cannot adopt the commissioner's orders and judgment either expressly or by clear implication from the record. After all, a refusal to "revise" leaves the action of the commissioner unchanged. Separate findings and conclusions would be appropriate if the record were viewed by the judge differently from the view of the commissioner.

We hold that the presiding judge did not abuse his discretion by failing to enter his own findings of fact and conclusions of law.

## IV
## Attorney Fees

Based upon our disposition of this case, Gibson's request for attorney fees against the State under RAP 18.1 and

occurred in the criminal context, where the purpose of bail is solely to assure the appearance of the accused. Here, the cash bail was made in a civil context where the purpose was not simply to assure the defendant's appearance but to secure the valid judgment executed against him for child support.

RCW 4.84.185, for putting forth a "frivolous defense" on appeal, is denied.[8]

We affirm the judgment.

COLEMAN and AGID, JJ., concur.

---

[8]At oral argument, Gibson's attorney also requested attorney fees based upon his claim that the State had acted with intent to deny appellant her civil rights by forfeiting the cash bail. This issue was not briefed, and the request is denied, on that basis, without further consideration.