[Nos. 15233-9-II; 16169-9-II.   Division Two.   July 21, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. ARNOLD LEON OSBORNE, *Appellant.*

*Mary H. Arden,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* for respondent.

ALEXANDER, C.J. — Arnold Leon Osborne appeals his conviction on eight counts of second degree possession of stolen property, four counts of forgery, one count of second degree theft, and two counts of third degree theft. Among other things, Osborne contends that he was denied his constitutional right to counsel. We reverse and remand for a new trial.

Between February and September of 1990, Osborne was employed as a mail processor at the main post office in Vancouver, Washington. Osborne worked the 7 p.m. to 3:30 a.m. shift. Only two to five people worked in the post office during the first 2 hours of that shift. According to Osborne's former supervisor, mail processors regularly handled credit cards that were coming through the mail for processing. In 1990, the Vancouver Post Office received several complaints that credit cards and other mail had not been received by postal patrons.

On September 6, 1990, two security agents employed by Meier and Frank department store observed Osborne making credit/access card purchases in a store in the Vancouver Mall. One of the agents became suspicious of Osborne because he appeared to be in a hurry. After obtaining the cardholder's name from the store's business office, the agent telephoned the cardholder and learned that he had not received his access/credit card in the mail.

Osborne was arrested and charged in Clark County Superior Court with one count of forgery, one count of possession of stolen property in the second degree, and one count of theft in the third degree. The information was amended on January 10, 1991, to charge Osborne with eight counts of possession of stolen property in the second degree, six counts of forgery, and four counts of second degree theft. All of the charges against Osborne were based on allegations that he possessed and used stolen access cards.

The trial court appointed attorney Alfred A. Bennett to represent Osborne. Sometime later, Osborne informed the trial court that he was dissatisfied with Bennett's representation, stating:

> Mr. Bennett . . . called me . . . about two or three days before we were supposed to go to trial . . . saying plead guilty to this . . . and I was trying to figure out why hasn't he called me before.
> Then the second time I came in, I wanted you to continue it to get a second opinion . . . because I felt Mr. Bennett was not representing me well enough and like I'd asked him did he speak to any of the witnesses, and he told me no, so that began to make me . . . leery of the court-appointed attorney.

Osborne requested a continuance to enable him to obtain a second opinion from another attorney. His request was granted.

According to Bennett, Osborne discharged him in early April 1991. However, neither Osborne nor Bennett informed the court until June 7, 1991, the Friday before the trial was to commence. On that date, Osborne, appearing by himself, requested another continuance of his trial date and new court appointed counsel. Osborne claimed he had discharged Bennett and tried unsuccessfully to secure private counsel. He said he needed counsel because he did not believe he could adequately represent himself.

The trial court denied Osborne's requests after expressing concern about the timeliness of the requests, and the fact that the State had incurred expense in preparing for trial. The trial court advised Osborne that he would have to represent himself at trial, stating:

Let's do it. We're going to go to trial Monday. You're going to represent yourself, Mr. Osborne. You've had the time. You've dismissed your public defender . . . You elected to dismiss him. You elected to get your own attorney. You have not done so. I am not going to continue it at the 11th hour. We'll go to trial Monday.

On the day of trial, Bennett appeared in the courtroom and asked the trial court for permission to withdraw as Osborne's counsel. His request was granted. Thereafter, a jury trial ensued at which Osborne was without the benefit of legal counsel.[1]

The jury found Osborne guilty of eight counts of second degree possession of stolen property, four counts of forgery, one count of second degree theft, and two counts of third degree theft. He was sentenced to 27 months' incarceration on each felony conviction and 365 days in jail on each third degree theft conviction. All sentences were ordered to run concurrently, and execution of the sentences for third degree theft was suspended for a period of 2 years on certain conditions. Osborne was also ordered to pay restitution in the amount of $8,661.79.

Osborne contends the trial court erred in denying him his constitutional right to counsel and the requested continuance. He asserts, in a separate appeal, that the trial court erred in ordering him to pay restitution in the amount of $8,661.79. The appeals were consolidated by order of this court. We address only the right to counsel issue, because it is dispositive.

■ In criminal prosecutions, the accused has a right to assistance of counsel. U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10). Indigent persons facing felony charges, or misdemeanor charges involving potential incarceration, are entitled to have counsel appointed to represent them in connection with the charge. *See Gideon v. Wainwright*, 372 U.S. 335,

---

[1]The record indicates, however, that the trial judge gave Osborne guidance regarding court procedure.

344, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963); *see also Argersinger v. Hamlin*, 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). The right to counsel in criminal cases is recognized in CrR 3.1(d)(1) which states "[u]nless waived, counsel shall be provided to any person who is financially unable to obtain one . . .." *See also* CrRLJ 3.1(d)(1).

Here, it is undisputed Osborne was indigent, and that he was faced with multiple felony and gross misdemeanor charges, each of which carried a possible prison or jail term upon conviction. Accordingly, Osborne was entitled to court appointed counsel.

The State contends Osborne waived his right to counsel by discharging Bennett as his counsel and failing to inform the trial court of that fact until the Friday before his trial. A defendant may waive his right to counsel, but that waiver must be made "knowingly and intelligently". *See Faretta v. California*, 422 U.S. 806, 835, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). The *Faretta* Court also stated:

> Although a defendant need not himself have the skill . . . of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, 422 U.S. at 835.

Clearly, there was no express waiver of counsel by Osborne. Indeed, the State conceded as much at oral argument before this court. Nor was there an implied waiver, there being no evidence that Osborne was advised of the dangers and disadvantages of self-representation. Thus, any waiver he arguably made would not be knowing and intelligent. Furthermore, the act of simply expressing dissatisfaction with a particular attorney does not, in our judgment, imply that an accused is waiving his or her right to all legal representation. Here it is clear that Osborne not only was not waiving his right to counsel, but was adamantly seeking counsel to assist him. The record reveals that after Osborne

expressed dissatisfaction with Bennett, he pleaded with the trial judge to appoint him new counsel. The following colloquy, which occurred between Osborne and the trial judge on the day of trial, demonstrates the point:

> THE COURT: Are you ready to go, Mr. Osborne?
> MR. OSBORNE: No, Your Honor.
> THE COURT: What would you like?
> MR. OSBORNE: I just wanted to . . . ask again . . . if you could appoint me another attorney because I'm not capable of defending myself . . . I don't have the legal wherewithal to defend myself . . ..

Such actions do not, in our view, constitute either an express or implied waiver of the right to counsel. There being no waiver, the trial court erred in requiring Osborne to represent himself at trial.

Reversed and remanded for new trial.

GREEN, J. Pro Tem., concurs.

MORGAN, J. (concurring) — I concur with the majority. I write only to point out that this whole problem could have been avoided if defense counsel had made a motion to withdraw when he first learned that his client wanted to fire him. *See* CrR 3.1(e).[2] If counsel had moved to withdraw at that time, the trial court would have been advised of the defendant's dissatisfaction with court appointed counsel, and it would have been able to continue original counsel or substitute new counsel well in advance of trial. No motion was made, however, and the trial court did not learn of defendant's dissatisfaction with counsel until 1 judicial day prior to trial. By that time, the court had only two options, neither of which seems to have been desirable: (1) Require original counsel to proceed (an option the court might well

---

[2]CrR 3.1(e) provides:

"Whenever a criminal cause has been set for trial, no attorney shall be allowed to withdraw from said cause, except upon written consent of the court, for good and sufficient reason shown."

have embraced, in view of the lack of a timely motion to withdraw pursuant to CrR 3.1(e)), or (2) appoint new counsel and continue the trial date so new counsel could prepare. As the majority demonstrates, the trial court did not have the option of requiring the defendant to proceed pro se, where the defendant was (a) indigent and (b) expressly requesting that he be provided with court appointed counsel.