WALTER, JUDGE:
Archie B. Coal Company and David Bailey, its Treasurer, Claimants,[1] seek an award from the Division of Environmental Protection, Respondent,[2] in the face amount of a bank certificate of deposit ("CD") posted as a collateral bond and used to satisfy the bonding requirement for the transfer of an existing surface mining permit to another entity.
Upon revocation of said payment and forfeiture of the bond, Respondent, the holder thereof, surrendered said CD to the issuing bank and the face amount thereof was ultimately paid by the issuing bank to Respondent.
*32 From the evidence at the hearings on November 18, 1994, and February 22, 1995, it appears that prior to August 21, 1986, Surface Mining Permit No. S-98-83 for a surface mining site not to exceed 135 acres near Julian, in Scott District, Boone County, West Virginia, had been issued or transferred to and was held by Big Tally Coal Corporation ("Big Tally") as the permit holder, and that in connection with said permit Claimants obtained a CD from 2nd Avenue Bank of South Charleston, South Charleston, West Virginia, later Shawnee Bank, ("issuing bank") and posted same as a collateral bond, which was used to satisfy all or part of the bonding requirements for the issuance or continuance of said permit.
The CD initially used was identified as No. 1519. It was replaced from time to time and identified by other numbers, including No. 1676, and eventually as No. 1872.
By letter dated May 2, 1986, Claimants requested that the CD, then No. 1519, "should continue to be used for surface mining bonding purposes on said permit when and as this permit is transferred to McClure excavating [sic]". By letter dated June 11, 1986, Claimants requested that said CD, then No. 1676, "should continue to be used for surface mining bonding purposes on said permit when and as this permit is transferred to McClure Excavating. ”
As of August 21, 1986, said permit was transferred by Respondent to McClure's Excavating, Incorporated [sic] ("McClure"), which became the permit holder ("permittee)".
On October 7, 1986, Claimants hand delivered a letter of the same date to Respondent attempting to cancel and void their letter of June 11, 1986, and stating that said CD was not to be used in any way or manner that would continue to bond the property originally permitted by permit No. S-98-83 or any successor permit that may have been issued. There is a typewritten note on the face of said letter signed by Thomas V. Rushman, Deputy Commissioner, dated October 7, 1986, as follows:
Mike Muncy and David Bailey hand-delivered this document on 10/7/86. They were advised that the Department of Energy could not accept this request and that the CD would continue to be used as bond on S-98-83 until either a replacement was submitted or the permit final released. They then asked that this document be made a part of the file regardless.
On April 23, 1987, said CD, then No. 1872, was issued to "West Virginia Department of Energy or Archie B. Coal" in the face amount of $30,197.26. By letter dated May 21, 1987, Respondent advised the bank that the CD had been received, and that Respondent waived the right to interest on said deposit and assumed that the interest would be paid to Archie B. Coal Company. Sometime later (the date is not clear on the photocopy attached to Claimants’ claim) the Respondent advised the issuing bank by letter that it had received a check for the interest on the CD and was returning the same to the bank for handling as Claimants were entitled to the CD interest and the Respondent did not have an address for the Claimants. Mr. Bailey testified that (evidently at some time during the controversy) Archie B. Coal Company received its mail at the issuing bank or his *33 residence.
By letter dated August 4, 1987, Claimants advised Respondent that it was to continue to hold the CD but that they did not wish for the CD "to continue to secure the bond and permit either as currently placed with or under new ownership." Respondent replied to this letter by a letter to Claimants dated August 12, 1987, the second paragraph of which states:
At the present time, this permit remains in the name of McClure Excavating, Inc. and the CD still being used as bond. We have no record in our office of this permit being transferred. However, the normal procedure for transfer would not allow for your CD to continue being used as bond without written permission from you to do so, as you have done for McClure Excavating, Inc. (Emphasis added.).
There were other letters from Claimants to Respondent in 1987 advising that they wished to be notified immediately of an action that might or could affect this bond, giving their address and telephone numbers and expressing opposition to any modification of the permit.
In 1988 the permit was renewed by the Respondent for an additional 5-year term with no other change being involved in the renewal.
During the late 1980's numerous activities took place with reference to said permit with the approval of Respondent, such as operator reassignments, modifications for increment bounding areas, and authorizing an additional drainage structure, all of which showed McClure to be the permittee.
Based on the evidence presented, all official communications initiated by Respondent after the 1986 transfer of the permit to McClure respecting activities under said transferred permit were addressed only to McClure, the permittee. There was no further transfer of the permit after the transfer to McClure in 1986.
By certified mail letter dated January 31, 1990, Respondent notified McClure that it had thirty days from receipt of said letter to request a hearing to show cause why subject operation permit should not be revoked because of McClure's failure to keep the operation current and advising that failure to request a hearing or failure to show cause why revocation should not occur would result in permit revocation and immediate forfeiture of bond. Evidently a show cause hearing was held. By certified mail letter dated June 12, 1990, Respondent advised McClure that at the show cause hearing McClure had not shown cause why the permit should not be revoked and declaring that said permit should be revoked and the associated performance bond forfeited. By certified mail letter dated June 27, 1990, Respondent surrendered the CD to the issuing bank and requested that the bank remit the amount of the CD to Respondent. Claimants were not shown as addressees or information addressees on any of these letters.
*34 By Cashier's Check dated November 22,1993, the issuing bank paid the face amount of said CD to Respondent.
Claimants claim that after their letter of October 7,1986, was hand-delivered to Respondent (i) Respondent was obligated to notify them prior to any permit modifications; (ii) Respondent was obligated to prohibit anyone other than the permittee from conducting operations on the permitted site; (iii) Respondent was obligated to notify them when the permit was to be revoked and the bond forfeited; (iv) Respondent was obligated to give Claimants the opportunity to accomplish the reclamation work required under the permit in lieu of forfeiting the collateral bond; and, (v) Respondent wrongfully converted the CD.
•The Court disagrees.[3]
The Claimants have not cited any authority that supports their positions.
Respondent claims, Claimants admit and the Court is of the opinion that Claimants effectively assigned or transferred to McClure, under what terms we do not know an existing bank CD, representing a deposit made by Claimants in the issuing bank, in order for McClure to fulfill the bonding requirement for the transfer of Strip Mining Permit S-98-83 to McClure. Thereafter the permit was transferred to McClure and the CD was held by Respondent solely for the purpose mandated by the applicable law, which, stated simply, is the return of the area disturbed or affected by the surface mining to an acceptable condition. Until that was accomplished the collateral bond, the CD, had to be held and relied upon by Respondent unless it was replaced by an acceptable bond.
As long as a permit is outstanding, the permittee is fully responsible to the Respondent for all activities on the area permitted and the law does not require the Respondent to deal with any other entity until there has been a failure by the permittee under the permit to such an extent revocation of the permit and forfeiture of the bond is called for.
Prior to forfeiture, the applicable rules or regulations[4] called for written notice to be given to the permittee and the surety on the bond, if any, informing them of the decision to forfeit the bond, if any, including the reasons for the forfeiture and the dollar amount to be forfeited. Claimants had not written notice addressed to them as addressees or as information addressees. However, Claimants were neither the permittee as that was McClure, nor the sureties on the bond because a collateral (not a surety) bond was posted and used. *36 the bond, and collection of the collateral. Having given up all control of the CD and not being sureties on the bond, Claimants were not entitled to notice of forfeiture. "Person who posted cash bail was not 'surety' and, therefore, was not entitled to notice of forfeiture." Words and Phrases "Surety", citing Matter of Marriage of Bralley, Div. 1, 855 P.2d 1174, 70 Wash. App. 644. The Court holds that there was no wrongful conversion of the CD.
Accordingly, the Court has determined that Claimants have failed to substantiate their claim against the Respondent, and further, the Court is of the opinion to and does hereby deny this claim.[7]
Claim disallowed.

Archie B. Coal Company and/or David Bailey, its Treasurer, will be referred to herein as Claimants.

Since 1991 the Division of Environmental Protection is the state agency that regulates surface mining. From 1985 to 1991 that role was performed by the Department of Energy. Both agencies will be referred to herein as Respondent.

The applicable statute at the time the surface mining permit was transferred to McClure, August 21, 1986, was the West Virginia Surface Mining and Reclamation Act, Acts 1985, c.77 (W. Va. Code §§22A-3-1 thru 4, Michie Replacement Volume).

WV CSR §38-2-12.4(a)(1)

The Court notes that there was a period of approximately three and one-half years between time the Respondent surrendered the CD and the time the issuing bank paid same, which delay and who received the interest on same during said period is left unexplained.