[No. 18626-1-III. Division Three. November 2, 2000.]

FRANCIS WAYNE JOHNSON, *Appellant*, v. KITTITAS COUNTY, *Respondent*.

*Kenneth D. Beckley*, for appellant.
*Gregory L. Zempel, Prosecuting Attorney*, for respondent.

Brown, A.C.J. — Francis Wayne Johnson, a surety writing bail bonds, asked the Kittitas County Superior Court to enter a declaratory judgment interpreting RCW 10.19.160 governing the surrender of persons (principals or prisoners) released on bail. The court decided the statute did not permit Mr. Johnson the discretion to surrender a principal to the Kittitas County Corrections Center (KCCC) whenever he believed himself insecure. First, the court interpreted RCW 10.19.160 (against Mr. Johnson) to require, before surrender, either (1) a court's "notice of forfeiture" or (2) "a notarized affidavit specifying the reasons for surrender" that would show a preceding failure to appear (FTA), bail forfeiture, and bench warrant. Second, the trial court interpreted RCW 10.19.160 (against the County) to require KCCC, after a showing of a proper surrender, to accept from a surety those prisoners originally incarcerated in KCCC, even when that original incarceration was for another county. Mr. Johnson appealed, the County did not.

Because the first sentence of RCW 10.19.160 unambiguously allows a surety to submit "a notarized affidavit specifying the reasons for surrender[]" without limitation, the trial court's interpretation is incorrect. We agree with the trial court's interpretation of the second sentence. Accordingly, we reverse.

## FACTS

Mr. Johnson does business as Ellensburg Bail Bonds mainly in Kittitas County. Mr. Johnson writes bonds for principals incarcerated as in-county prisoners as well as out-of-county prisoners. Sometimes multiple bonds, both in and out of the county are required. The primary purpose of bail is to assure the reappearance of the prisoner at the proper time and place. Mr. Johnson, as surety and bail

agent, contracts with the prisoner, as principal, to post a bond satisfying a court's bail condition in order to obtain his principal's release from custody. The County is not a party to the contract; its role in the process is limited to ensuring proper paperwork is completed for each legal hold.

Until 1997, Mr. Johnson would surrender his principals back to the County whenever he would deem himself insecure no matter what county instigated the initial arrest. The County then notified the proper courts of the surrender. In 1997, the County changed its surrender polices, limiting them to persons incarcerated based on Kittitas County court felony or DUI charges. If the principal was bonded on charges in Kittitas County and elsewhere, the County would solely accept principals on County charges.

Mr. Johnson asked the trial court for a declaratory judgment interpreting RCW 10.19.160 to allow him to surrender "a person in a criminal case under surety bond to the facility in which the person was originally held in custody or the county or jail affiliated with the court issuing the warrant resulting in bail so long as the surrender is accompanied by the appropriate notice of forfeiture or notarized affidavit specifying the reason for surrender." The County denied Mr. Johnson's interpretation.

After hearing, the trial court issued a memorandum opinion, then consistent findings and conclusions. The trial court decided RCW 10.19.160 meant (1) surrender of prisoners must be preceded by a FTA, bail forfeiture, and arrest warrant, and (2) surrender could be made to KCCC if the prisoner had been originally held in that facility when bonded, whether or not they were held for an in or out-of-county matter.

Mr. Johnson filed this notice of appeal.

## ANALYSIS

### A. Procedural Matters

■ Preliminarily, the County correctly points out Mr. Johnson failed to assign error to the trial court's findings of fact. Thus, the findings of fact are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

■ Second, the County correctly notes Mr. Johnson's failure to assign error to the trial court's specific conclusions of law. But Mr. Johnson did assign error generally to the trial court's ultimate conclusion as to RCW 10.19.160, and the thrust of his briefing articulates his challenge to the trial court's interpretation of that statute. Consequently, the omission is no bar to review of the determinative legal issues.

Third, the County asks us to strike and disregard three attachments to Mr. Johnson's brief that also appear in Appellant's Supplemental Clerk's Papers. One attachment is a declaration of Mr. Johnson's counsel regarding the other two attachments; letters exchanged between Mr. Johnson and the County *after* the trial court entered its decision. Even if we were to consider the attachments, they are not critical to our discussion. They merely show the parties attempted to apply the trial court's decision.

### B. Prerequisites for Surrender

The issue is whether the trial court erred when interpreting RCW 10.19.160 to not permit Mr. Johnson to surrender his principals to the KCCC whenever he deemed himself insecure and concluding instead that surrender must be accompanied by either a notice of forfeiture or affidavit supported by reasons limited to precedent FTA, subsequent bail bond forfeiture, and new arrest warrant.

■ As this action turns on the correct interpretation of RCW 10.19.160, the standard of review is de novo. *State v. Azpitarte*, 140 Wn.2d 138, 140-41, 995 P.2d 31 (2000).

RCW 10.19.160 states:

> The surety on the bond may return to custody a person in a criminal case under the surety's bond if the surrender is accompanied by a notice of forfeiture or a notarized affidavit specifying the reasons for the surrender. The surrender shall be made to the facility in which the person was originally held in custody or the county or city jail affiliated with the court issuing the warrant resulting in bail.

■■ The purpose of statutory interpretation is to effectuate the Legislature's intent. *Hubbard v. Dep't of Labor & Indus.*, 140 Wn.2d 35, 43, 992 P.2d 1002 (2000). Absent ambiguity, the reviewing court relies on the language of the statute alone. *Azpitarte*, 140 Wn.2d at 142. But, if the statute is subject to more than one reasonable interpretation, the appellate court may employ the tools of statutory construction. *State v. Bash*, 130 Wn.2d 594, 601, 925 P.2d 978 (1996).

RCW 10.19.160 contains two sentences, each of which raises a discrete issue of first impression. The first sentence pertains to *when* the surety can surrender his principal, the issue discussed in this part of our analysis. The second sentence relates to *where* the surety may surrender his principal, an issue discussed in part C.

Mr. Johnson argues he has the discretion to surrender a prisoner whenever he believes himself insecure so long as he provides the correctional facility with an affidavit explaining the surety's reasons for surrendering the client. According to Mr. Johnson, this reading is consistent with the bail bondsman's traditional common law right to seize and surrender his principal at any time during their contractual relationship.

As the United States Supreme Court said long ago:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be

done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the re-arrest by the sheriff of an escaping prisoner.

*Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 371, 21 L. Ed. 287 (1872).

*Taylor* does not control the outcome here. Although "The Rule of Taylor" is generally understood to be the seminal authority on the bond surety's common law authority to seize and surrender his principal, it is also dicta; the *Taylor* Court's holdings addressed the problem of bond forfeiture and multiple jurisdictions, not preemptive surrenders. *See* Todd C. Barsumian, Note, *Bail Bondsmen and Bounty Hunters: Re-Examining the Right to Recapture*, 47 Drake L. Rev. 877, 885-87 (1999) (discussing "The Rule of Taylor" and its critics). Further, the bonded principal in *Taylor* had actually jumped bail. *Taylor*, 83 U.S. at 368.

Here, the precedent question is whether the first sentence of RCW 10.19.160 is ambiguous.

 The first sentence of RCW 10.19.160 plainly states a "notice of forfeiture or notarized affidavit specifying the reasons for the surrender" must accompany the client's surrender. Although nothing in the statute defines "notice of forfeiture" or "reasons for the surrender," the meanings are clear. The "notice of forfeiture" refers to the notice required under RCW 10.19.090 that is given to a surety by the court as part of the forfeiture proceedings occurring when a principal fails to appear. Under RCW 10.19.090 the court must notify the surety in writing within 30 days of the FTA or else the judgment of forfeiture is null and void. *In re Marriage of Bralley*, 70 Wn. App. 646, 651, 855 P.2d 1174 (1993) (no bond forfeiture unless surety notified within 30 days of client's failure to appear).

Even though unlimited, the term "reasons" used in the context of the entire sentence is not ambiguous. It means a recitation of facts in the form of an affidavit given by the

surety to support surrender. While we agree that failure to appear, forfeiture, or bench warrant are reasons that may reasonably support a surety's surrender decision, we contemplate others. For example, the surety may become insecure upon receiving information that a principal intends flight. Practically speaking, persons surrendered immediately go before a judge pursuant to CrR 3.2(a) to review and reconsider release conditions. RCW 10.19.090, .100, .105. Bail conditions may be continued, modified, or revoked by the court. And the jail or detention facility receiving a surrendered principal acts ministerially, not with discretion. Although bail may be possible under approved bail schedules, ultimately it is the court that sets release conditions. RCW 10.19.040.

In sum, we conclude that the first sentence of RCW 10.19.160 is unambiguous. The provision means what it says; the bail bondsman can effectuate surrender with either notice of forfeiture or an affidavit stating the reasons compelling the bondsman to surrender his principal. *See Morgan v. Johnson*, 137 Wn.2d 887, 891-92, 976 P.2d 619 (1999) (observing that court reviewing plain meaning of statute assumes Legislature "means exactly what it says"). While we harbor reservations as to the wide scope of surrender authority RCW 10.19.160 seemingly grants to bail bondsmen, any alterations to the plain language of the statute is best left to the Legislature.

## C. Place of Surrender

We now reach the second issue of whether the trial court erred by interpreting RCW 10.19.160 to require KCCC to accept prisoners for out-of-county surrenders when legally established.

Although the County did not file an appeal, it seems to argue against the court's interpretation requiring KCCC to accept prisoners properly eligible for surrender as discussed in part B who were originally incarcerated in the County for other counties. Even assuming that Mr. Johnson's appeal implicates this last issue, we agree with the trial court's interpretation.

The second sentence of RCW 10.19.160 unambiguously states that the surety can surrender the offending principal to either (1) "the facility in which the person was originally held in custody," or (2) "the county or city jail affiliated with the court issuing the warrant resulting in bail." Reading the two clauses together clarifies any perceived ambiguity and further lends insight to the Legislature's intent. *Hubbard*, 140 Wn.2d at 43. Therefore, we conclude that the "facility in which the person was originally held in custody" refers to the place where the principal was incarcerated at the time he was released on bail. For example, if KCCC incarcerated a prisoner for another county when bailed out and that other county later issues a bench warrant for the prisoner for FTA, then KCCC is obligated to receive the prisoner if the surety elects to surrender at KCCC.

Here also, the second sentence of RCW 10.19.160 means what it says; the bondsman "shall" surrender the offending principal "to" the appropriate facility or jail. The County's contrary interpretation cannot offset the plain meaning of the statute.

### D. Costs

Without citation to a single authority, Mr. Johnson makes a fleeting request for statutory costs. Citation to applicable authorities is expected as it advises the appellate court of appropriate grounds for awarding expenses or attorney fees. *See Wilson Court Ltd. P'ship v. Tony Maronis, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998). *See also* RAP 18.1(b).

In any event, we conclude Mr. Johnson is entitled to costs pursuant to RCW 7.24.100, provided he complies with RAP 14.4.

### CONCLUSION

We hold that the trial court erred when deciding the first sentence of RCW 10.19.160 required interpretation. The court correctly decided the meaning of the second sentence was plain and required no interpretation.

Reversed.

SWEENEY and SCHULTHEIS, JJ., concur.

Reconsideration granted and opinion amended January 11, 2001.

Review denied at 144 Wn.2d 1002 (2001).